## M'Gee *against* Campbell.

A sale and delivery of personal property for the purpose of hindering and defeating creditors in the collection of their debts, is fraudulent and void as to such creditors; but good and available as to the parties themselves. Nor can the creditors avoid such sale and delivery except by legal process; and in taking the property without such process they are trespassers; and the officer taking it with process out of his jurisdiction thereby becomes a trespasser.

ERROR to the common pleas of *Jefferson* county.

John B. M'Gee against William Campbell and Henry Smith. Trespass *vi et armis* for taking two horses. The facts of the case seemed to be, that Richard Wolverton had been the owner of the horses, and, being indebted, he made a pretended sale of them to the plaintiff, with the fraudulent intention of preventing his creditors from levying and selling them, and delivered the possession of them. The plaintiff gave his note to Wolverton for the price of them, and removed them into Clearfield county, a short distance from where Wolverton lived. The defendant obtained a judgment against Wolverton in Jefferson county, and an execution, which he put into the hands of Henry Smith, the other defendant, who was a constable, and they went and found the horses in Clearfield county, in the possession of the plaintiff, and took them away.

The court below instructed the jury that if they believed the transaction between Wolverton and M'Gee was fraudulent, it vested no title to the horses in the plaintiff, and therefore he could not recover. This was the subject of the error assigned.

*M'Calmont*, for plaintiff in error.
*Buffington*, for defendant in error.

The opinion of the Court was delivered by

KENNEDY, J.—The sale of the property in question by R. Wolverton to M'Gee, the plaintiff, was most probably made for the purpose of preventing the creditors of Wolverton from enforcing the payment of the debts due to them; and was therefore no doubt void as against them. But it was not only good and binding as against the parties, that is, Wolverton and M'Gee, but likewise against all the rest of the

world, excepting the creditors of Wolverton. Notwithstanding, however, it was void against them, still they could not seize or take the property wherever they happened to meet with or find it, unless under legal process giving and extending an authority to the place to do so. Campbell, one of the defendants, it is true, had obtained a judgment against Wolverton before a justice of the peace in Jefferson county, upon which an execution had been sued out directed to Smith, the other defendant, and was in his hands at the time that he and Campbell took the property. But this execution did not authorize Smith to go beyond the limits of the county to seize property under it. If he went out of the county of Jefferson, where the justice resided before whom the judgment was obtained and from whom the execution was issued, it was the same out of the county as if he had no process whatever in his hands against Wolverton. Having no authority then to take the property except in Jefferson county, it follows of course, and necessarily too, that he became a trespasser in taking it in Clearfield county. Campbell had no authority, and could not have justified himself for having touched the property, except it had been to have assisted Smith, upon his request, in Jefferson county, had the property been found there, where Smith himself would have been justified in taking the property by virtue of the execution in his hands. Smith and Campbell were then both trespassers here. The question next presents itself, seeing a trespass was committed, against whom or upon whose rights was it committed? If Wolverton had not parted with his right in the property to M'Gee, it is perfectly clear that, as the owner of it, he might have maintained an action of trespass against the defendants for having taken it; but having previously sold and transferred all his right therein to the plaintiff here, it is equally clear that he could maintain no such action, because, as against him, the transfer is perfectly good and available. Upon it, if he were in the possession of it, and should attempt to withhold it from the plaintiff against his consent, the latter might recover it from him. This being the case, what is there then to prevent the plaintiff from maintaining the action? He is invested with the same right to the property that Wolverton would have had, provided he had not sold to the plaintiff: consequently the latter may maintain this action. No plausible objection can be made to his doing so. For although the sale and transfer of the property by Wolverton to the plaintiff may be, and doubtless is, void against the creditors of the former, because made for the purpose or with a view to hinder, delay or defraud them in the collection of their debts, yet they have no right to meddle with or take it, unless they will come armed with the authority of the law for that purpose. The court below seem to have entertained the idea that if the sale to the plaintiff was fraudulent it was therefore void to all intents and purposes against all the world, and that no right of property whatever became vested in the plaintiff by it. This, however, is not the case, because it is good and available against every body and for every

[M'Gee v. Campbell.]

purpose, except as against the creditors of Wolverton, and even as against them it is sufficient to protect the plaintiff in the possession and the enjoyment of it, until they shall take it by virtue of legal process suited to that end. The court below therefore erred in directing the jury that it did not alter the case, even if the property were taken by the defendants in Clearfield county; and that the plaintiff could not recover in this action, if they found the sale to the plaintiff to be fraudulent, whether the property was taken in Jefferson or Clearfield county.

Judgment reversed, and a *venire de novo* awarded.